IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CONTINENTAL WESTERN INSURANCE COMPANY, <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> COUNTRY MUTUAL INSURANCE COMPANY, <br><br> Defendant/Counter-Claimant. | Case No. 3:17-CV-1231-NJR-GCS |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This declaratory judgment action arises from a vehicle accident that occurred in September 2012. The accident resulted in significant injuries to the passengers of both vehicles—and three separate lawsuits, all of which have now settled. The issue presently before this Court is which insurance company's policy provided primary coverage for the Hamel Fire Protection District ("Hamel Fire"), a defendant in each of the three lawsuits.[1]

On November 9, 2017, Plaintiff/Counter-Defendant Continental Western Insurance Company ("Continental") filed a Complaint for Declaratory Judgment against Country Mutual Insurance Company ("Country Mutual") (Doc. 1). On June 13, 2018,

---

[1] Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a)(1) in that Continental Western Insurance Company is an Iowa corporation with its principal place of business in Urbandale, Iowa, and Country Mutual Insurance Company is an Illinois corporation with its principal place of business in Bloomington, Illinois. Furthermore, this case involves a dispute over insurance policies providing well over $75,000 in coverage; accordingly, the amount in controversy is sufficient for federal diversity jurisdiction.

Country Mutual filed a Counterclaim for Declaratory Judgment (Doc. 25). Continental contends that Country Mutual's policy provided primary coverage for its insured, Hamel Fire, while Country Mutual claims Continental's policy provided primary coverage for both Hamel Fire and Country Mutual's insured, Alhambra-Hamel Ambulance Service. Both insurance companies contend that the other's policy provided primary coverage over and above any coverage provided by its own policy.

Continental has now moved for summary judgment on Counts I, II, and III of its Complaint for Declaratory Judgment, as well as on Counts I, II, and III of Country Mutual's Counterclaim (Doc. 38). Country Mutual did not file a cross-motion for summary judgment. For the reasons set forth below, Continental's motion is granted.

## BACKGROUND

**A.  The Underlying Accident**

On September 17, 2012, an ambulance responding to an emergency call suddenly turned right from the left-hand lane of southbound Interstate 55 in an attempt to go up the exit ramp of a rest area for southbound traffic (Doc. 38-1). A semi-truck owned by Specialized Transportation, Inc. ("STI") and driven by Daniel Eddinger was in the right-hand land of the interstate (*Id.*). Unable to stop, the truck struck the right side of the ambulance (*Id.*).

The ambulance, driven by Theodore Berg., Jr., was operated by Alhambra-Hamel Ambulance Service. The Alhambra-Hamel Ambulance Service is a joint enterprise formed in 1989 by Hamel Fire and the Alhambra Fire Protection District ("Alhambra Fire") to provide ambulance service to the residents of both fire districts (Doc. 49 at p. 14).

The agreement between the Alhambra and Hamel fire protection districts provided that "[a]ll property; both real and personal, acquired by Alhambra and Hamel hereunder shall be owned equally by them" (*Id.* at p. 15). Under Section 3 of the Bylaws of the ambulance service, the trustees agreed to "join funds, tax monies, clerical and equipment to function as one service" called the Alhambra-Hamel Ambulance Service (*Id.* at p. 21).

**B.     The Underlying Lawsuits**

The September 17, 2012 accident resulted in significant injuries to passengers of both the ambulance and the semi-truck, as well as three separate lawsuits filed in the Circuit Court of Madison County, Illinois.

   **1.**   *Conway, et al. v. Alhambra-Hamel Ambulance Services, et al.* **(Doc. 38-1)**

Rayburn Conway, the co-driver and passenger in the semi at the time of the accident, was seriously injured in the collision. He filed suit asserting negligence claims against Alhambra Fire, Hamel Fire, and Alhambra-Hamel Ambulance Service, alleging Berg was their agent and driver acting within the scope of his employment. He also sued Berg individually.

   **2.**   *Eddinger v. Alhambra-Hamel Ambulance Service, et al.* **(Doc. 38-2)**

Eddinger, the driver of the semi owned by STI, also suffered injuries and filed suit against Berg, Alhambra-Hamel Ambulance Service, Alhambra Fire, and Hamel Fire. His lawsuit alleged Berg was an agent of the defendants and that, while acting within the scope of his agency, he operated an ambulance owned by Alhambra-Hamel Ambulance Service and caused the ambulance to collide with the truck. Eddinger alleged claims of negligence against each defendant.

3. *Specialized Transportation, Inc. v. Alhambra-Hamel Ambulance Service, et al. (the "STI Third-Party lawsuit")* **(Doc. 38-3)**

Michele Logue, a passenger in the ambulance, filed a lawsuit against Eddinger and STI, titled *Logue v. Eddinger, et al.* STI then filed a third-party complaint against Alhambra-Hamel Ambulance Service, Alhambra Fire, and Hamel Fire. The STI Third-Party Complaint denied liability to Logue but contended that, if judgment was entered against STI and in favor of Logue, STI was entitled to contribution from Alhambra Fire, Hamel Fire, and/or Alhambra-Hamel Ambulance Service.

All three cases have settled; the remaining issue is which insurance company—Continental or Country Mutual—is responsible for paying the defense fees incurred in defending Hamel Fire in the three lawsuits.

*Relevant Policy Provisions*

**1. The Continental Policy**

Continental issued a policy to Hamel Fire, its insured, for the period of September 4, 2012 to September 4, 2013 (Doc. 38-5). The Continental policy includes business auto coverage subject to a $5,000,000 limit of liability for any one accident or loss (*Id.* at p. 4). However, the ambulance involved in the accident, a 2010 Freightliner Ambulance with vehicle identification number 1FVACWDU2ADAN8141, is not listed on Continental's "Schedule of Covered Autos You Own" (*Id.* at pp. 5-6). Nevertheless, the policy Declarations states that any "Auto" is covered under Hamel Fire's liability coverage (*Id.* at pp. 4, 16). Thus, there is no dispute among the parties that the ambulance at issue is a covered "Auto" under Hamel Fire's policy with Continental.

The policy also includes a "Fire/EMS-PAK Auto Enhancement Endorsement," which states as follows:

**SECTION II – LIABILITY COVERAGE** []:

**A.1 Who is An "Insured"**[]:

The following are "insureds":

    **a.**    You for any covered "auto"
    **b.**    Any employee of yours while using a covered "auto" you don't own, but only for an official emergency response authorized by you.
    **c.**    The owner of any "commandeered auto" while the "auto" is in your temporary care, custody or control.
    **d.**    Any "employee" not included in **b.** above and anyone else while using with your permission a covered "auto" you own, hire or borrow . . .
    **e.**    Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

(*Id.* at p. 30).

The policy further contains an "Other Insurance" provision, which states in relevant part:

> For any covered "auto" you own and any "commandeered auto", this endorsement provides primary insurance. For any covered "auto" you don't own, the insurance provided by this endorsement is excess over any other collectible insurance.

(*Id.* at p. 32). The policy defines "Commandeered Auto" as "any 'auto' you do not own that you seize or take possession of for official use during an emergency response incident." (*Id.* at p. 33).

    **2. The Country Mutual Policy**

Country Mutual issued a multi-peril commercial lines primary insurance policy to

Alhambra-Hamel Ambulance Service for the period of December 24, 2011 to December 24, 2012 (Doc. 38-4). The policy includes business auto coverage subject to a $1,500,000 million limit of liability for any one accident or loss, but only for certain "autos," including those described in Item Three of the Declarations for which a premium charge is shown (*Id.* at pp. 115, 122). The 2010 Freightliner Ambulance involved in the September 17, 2012 accident is included in Item Three "Schedule of Covered Autos You Own."

The Country Mutual policy further contains an "Other Insurance" provision similar to that found in the Continental policy. Country Mutual's "Other Insurance" provision states:

> For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. * * *

(*Id.* at p. 129).

## LEGAL STANDARD

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress &Co.*, 398 U.S. 144, 160 (1970); *see also Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986).

DISCUSSION

Continental argues that the Country Mutual policy provides primary coverage for Hamel Fire, which must be exhausted before any excess coverage is applied under the Continental policy. Continental relies on the "Who Is An Insured" provision of the Country Mutual policy to argue that Hamel Fire is an insured under that policy, in addition to the Continental policy that was issued to Hamel Fire.

The Country Mutual policy states, in relevant part:

**SECTION II – LIABILITY COVERAGE**

\* \* \*

1. **Who Is An Insured**

    The following are "insureds":

    a. You for any covered "auto".

    b. Anyone else while using with your permission a covered "auto" you own, hire or borrow . . .

    c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

(*Id.* at pp. 123-24).

Continental argues that the "You" in Country Mutual's policy is Alhambra-Hamel Ambulance Service. Furthermore, the 2010 Freightliner Ambulance involved in the accident was a "covered auto" under the policy (Doc. 38-4 at p. 120). Under paragraph (b), Continental asserts, anyone else using a covered auto with Alhambra-Hamel Ambulance Service's permission is an insured. As the ambulance driver, Berg used the vehicle with permission from Alhambra-Hamel Ambulance Service. Thus, he also is an insured. Finally, under paragraph (c), "anyone liable for the conduct of an 'insured'" is also an

insured, "but only to the extent of that liability." Because the lawsuits at issue allege Berg was an "agent and driver" or "employee" of Hamel Fire, Hamel Fire could potentially be held liable for the conduct of "an insured." Thus, Continental argues, Hamel Fire is an insured under the Country Mutual primary policy.

Because Hamel Fire is an insured under both the Country Mutual and Continental policies, Continental then turns to the "Other Insurance" clauses of both policies, noting that when two or more policies potentially respond to a loss, courts applying Illinois law look to each policy's "other insurance" clause to determine how to allocate the loss between the insurers. *Bituminous Cas. Co. v. Royal Ins. Co. of America*, 301 Ill. App. 3d 720, 726 (Ill. App. Ct. 1998). Here, since Country Mutual's "Other Insurance" clause states that it provides primary insurance for any "covered 'auto' you own," and because Alhambra-Hamel Ambulance Service "owned" the ambulance, Continental argues that the Country Mutual policy provides primary coverage for the underlying lawsuits. Likewise, because the ambulance was *not* owned by Hamel Fire, the insurance provided by Continental would be excess pursuant to Continental's "Other Insurance" clause.

In support of its argument that the ambulance was "owned" by Alhambra-Hamel Ambulance Service at the time of the accident, Continental points to the fact that the 2010 Freightliner ambulance was listed in Item Three of the Country Mutual Declarations (*i.e.*, the "Schedule of Covered Autos You Own"), the Certificate of Title for the ambulance listing Alhambra Hamel Ambulance Service as the owner (Doc. 38-6), the Bill of Sale from Truck Centers, Inc., listing the ambulance as being sold to "Alhambra-Hamel Ambulance Service (Doc. 38-7), and the Illinois Traffic Crash Report for the September 17, 2012

accident, which lists the owner of the ambulance as "Alhambra Hamel, Ambulance Service" (Doc. 38-8).

In response, Country Mutual argues that the subject ambulance was not owned by Alhambra-Hamel Ambulance Service, but rather was *jointly owned* by both Hamel Fire and Alhambra Fire. It also distinguishes its policy language, the Bill of Sale, and the Illinois Traffic Crash Report as third-party documents that do not definitively establish ownership. Finally, Country Mutual argues that while a certificate of title is evidence of ownership, it is not conclusive, as "one can own an automobile though the certificate of title is in the name of another." *State Farm Mutual Auto Ins. v. Lucas*, 365 N.E.2d 1329 (Ill. Ct. App. 1977). Although a *prima facie* presumption of legal ownership arises from a certificate of title, this presumption may be rebutted by competent evidence of actual ownership. *Klein v. Pritikin*, 285 N.E.2d 457 (Ill. App. Ct. 1972).

Illinois courts interpreting similar "other insurance" clauses have held that the insurer of the owner of the vehicle involved in the accident provides primary coverage. *Vedder v. Cont'l W. Ins. Co.*, 978 N.E.2d 1111, 1116 (Ill. App. Ct. 2012); *Pekin Ins. Co. v. Fid. & Guar. Ins. Co.*, 830 N.E.2d 10, 18 (Ill. App. Ct. 2005) ("Where two insurance policies each purport to offer only secondary coverage, the insurance of the vehicle's owner is primary while that of the driver is secondary."). In *Vedder*, a similar case involving the primacy of coverage between two insurers, the Illinois Court of Appeals also noted that in addition to precedent, public policy and industry custom dictate that "the insurance covering the vehicle involved in the accident is the primary insurance." *Id.* (citing *In State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 695 N.E.2d 848 (Ill. 1998)

(pursuant to custom in the insurance industry and Illinois public policy, primary liability is generally placed on the insurer of the *owner* of an automobile) (emphasis added)); *see also* 625 ILL. COMP. STAT. § 5/7–317.

In this case, the Country Mutual policy does not define "own." However, the plain, ordinary meaning of "own" can be applied. *Am. States Ins. Co. v. Gawlicki & Hussey, Inc.*, 596 N.E.2d 720, 721 (Ill. App. Ct. 1992) ("If the words of a policy can reasonably be given their plain, ordinary and popular meaning, the provisions should be applied as written and the parties should be bound to the agreement they made."); *see also Schuchman v. State Auto Property and Cas. Ins. Co.*, 733 F.3d 231, 235 (7th Cir. 2013) ("Like any contract under Illinois law, an insurance policy is construed according to the plain and ordinary meaning of its unambiguous terms."). And Country Mutual is correct that, under Illinois law, ownership of a vehicle is determined by the intent of the parties. *State Farm*, 365 N.E.2d at 1332; *Am. States Ins. Co.*, 596 N.E.2d at 721–22 ("The ownership of a vehicle for insurance purposes is governed by the intent of the parties at the time of the collision.").

As evidence of actual ownership, Country Mutual points to the affidavit of Richard J. Gusewelle, the current Treasurer and chief fiscal officer of Hamel Fire, who attested that on September 17, 2012, "all ambulances and equipment used by the Alhambra-Hamel Ambulance Service were jointly owned in equal shares between the Hamel Community Fire Protection District and the Alhambra Community Fire Protection District." (Doc. 49 at p. 13). Gusewelle further attested that on September 17, 2012, the 2010 Freightliner ambulance was "jointly owned in equal shares by Hamel Community Fire Protection District and Alhambra Community Fire Protection District." (*Id.*). Country

Mutual also refers to the original "Agreement to Provide Ambulance Service Jointly," signed by Hamel Fire and Alhambra Fire on September 18, 1989, which provides that "[a]ll property; both real and personal, acquired by Alhambra and Hamel hereunder shall be owned equally by them." (*Id.* at p. 15).

While it may be true that Alhambra and Hamel intended in 1989 for all property to be owned equally by the two fire protection districts, the Court finds that Country Mutual has not rebutted the presumption that Alhambra-Hamel Ambulance Service owned the ambulance at the time of the accident. Not only is the Certificate of Title in the name of Alhambra-Hamel Ambulance Service, but the Country Mutual policy was issued directly to it. Moreover, the ambulance was listed on Country Mutual's Schedule of Covered "Autos" You Own. The Court finds Country Mutual's argument that Alhambra-Hamel Ambulance Service did not own an ambulance that Country Mutual insured as a "covered 'auto' you own" to be disingenuous.

The Court finds that the evidence—the Certificate of Title, the policy issued to Alhambra-Hamel Ambulance Service, and the fact that the ambulance was listed on the Schedule of Covered "Autos" You Own—all weigh in favor of finding that Alhambra-Hamel Ambulance Service owned the 2010 Freightliner ambulance involved in the accident. And under Illinois law, that means Country Mutual, as the insurer of the vehicle owner, provided primary coverage under its Other Insurance provision.

## Conclusion

Because Alhambra-Hamel Ambulance Service owned the ambulance at issue and Country Mutual's "Other Insurance" clause stated that its coverage was primary for any

Mutual also refers to the original "Agreement to Provide Ambulance Service Jointly," signed by Hamel Fire and Alhambra Fire on September 18, 1989, which provides that "[a]ll property; both real and personal, acquired by Alhambra and Hamel hereunder shall be owned equally by them." (*Id.* at p. 15).

While it may be true that Alhambra and Hamel intended in 1989 for all property to be owned equally by the two fire protection districts, the Court finds that Country Mutual has not rebutted the presumption that Alhambra-Hamel Ambulance Service owned the ambulance at the time of the accident. Not only is the Certificate of Title in the name of Alhambra-Hamel Ambulance Service, but the Country Mutual policy was issued directly to it. Moreover, the ambulance was listed on Country Mutual's Schedule of Covered "Autos" You Own. The Court finds Country Mutual's argument that Alhambra-Hamel Ambulance Service did not own an ambulance that Country Mutual insured as a "covered 'auto' you own" to be disingenuous.

The Court finds that the evidence—the Certificate of Title, the policy issued to Alhambra-Hamel Ambulance Service, and the fact that the ambulance was listed on the Schedule of Covered "Autos" You Own—all weigh in favor of finding that Alhambra-Hamel Ambulance Service owned the 2010 Freightliner ambulance involved in the accident. And under Illinois law, that means Country Mutual, as the insurer of the vehicle owner, provided primary coverage under its Other Insurance provision.

## Conclusion

Because Alhambra-Hamel Ambulance Service owned the ambulance at issue and Country Mutual's "Other Insurance" clause stated that its coverage was primary for any

covered "auto" you own, the Court finds that judgment as a matter of law is proper for Continental Western Insurance Company. The motion for summary judgment filed by Continental (Doc. 38) is **GRANTED** as to Counts I, II, and III of its Complaint for Declaratory Judgment, as well as on Counts I, II, and III of Country Mutual's Counterclaim.

The Court **DECLARES** that the Country Mutual policy provides primary coverage for Hamel Fire, its insured by definition. The Court further **DECLARES** that Country Mutual had a duty to defend Hamel Fire in the underlying lawsuits, including the duty to reimburse Continental for the cost of defending Hamel Fire. Finally, any coverage provided for Hamel Fire under the Continental policy was excess over the insurance provided by the Country Mutual policy.

Finally, because the Court's ruling is dispositive of the matter, Continental Mutual's claims in Count IV for Equitable Subrogation and Count V for Unjust Enrichment, as well as Country Mutual's claims in Count IV for Equitable Subrogation and Count V for Unjust Enrichment, are **DISMISSED with prejudice.**

The Clerk of Court is **DIRECTED** to enter judgment according and close this case.

**IT IS SO ORDERED.**

DATED:   September 3, 2019

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**