IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CONTINENTAL WESTERN INSURANCE COMPANY,** | |
| Plaintiff/Counter-Defendant, | |
| v. | Case No. 3:17-CV-1231-NJR-GCS |
| **COUNTRY MUTUAL INSURANCE COMPANY,** | |
| Defendant/Counter-Claimant. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is Continental Western Insurance Company's ("Continental") petition for fees (Doc. 70) related to its defense of Hamel Fire Protection District in three separate but consolidated state court actions stemming from a 2012 motor vehicle accident ("the Underlying Lawsuits"). Continental seeks a total of $253,739.93 in fees from Defendant Country Mutual Insurance Company ("Country Mutual"), including attorneys' fees, costs, and pre- and post-judgment interest. For the following reasons, the Court grants the petition for fees, but reduces the amount awarded to $250,540.90.

### PROCEDURAL BACKGROUND

On November 9, 2017, Continental initiated this declaratory judgment action against Country Mutual to determine which insurance company's policy provided primary coverage for Hamel Fire in the Underlying Lawsuits (Doc. 1). On June 13, 2018,

Country Mutual filed a counterclaim for declaratory judgment (Doc. 25). Both insurance companies contended that the other's policy provided primary coverage over and above any coverage provided by its own policy.

At summary judgment, the Court found that Country Mutual's "Other Insurance" clause provided primary coverage for Hamel Fire, its insured by definition (Doc. 54). The Court further declared that Country Mutual had a duty to defend Hamel Fire in the Underlying Lawsuits, including the duty to reimburse Continental for the cost of defending Hamel Fire. Finally, any coverage provided for Hamel Fire under the Continental policy was excess over the insurance provided by the Country Mutual policy. The Court further stated: "because the Court's ruling is dispositive of the matter, Continental Mutual's claims in Count IV for Equitable Subrogation and Count V for Unjust Enrichment, as well as Country Mutual's claims in Count IV for Equitable Subrogation and Count V for Unjust Enrichment, are **DISMISSED with prejudice**."

At that point, judgment was entered, and the case was closed (Doc. 55). Country Mutual filed a Notice of Appeal (Doc. 56). After an unsuccessful mediation, the Seventh Circuit Court of Appeals entered a jurisdictional order noting that the district court should have calculated the issue of damages before entering judgment. The parties then filed an agreed motion for voluntary dismissal of the appeal, which was granted. Upon learning that damages were still at issue in the matter (although not from the parties themselves but on *sua sponte* review of the Seventh Circuit's docket), the undersigned directed the parties to brief the issue of damages (Doc. 66).

Continental filed its brief regarding the calculation of damages on June 15, 2020

(Doc. 70), along with supporting documentation. After an extension of time, Country Mutual filed its response on July 13, 2020, along with a request for an evidentiary hearing (Doc. 73). That request initially was granted (Doc. 75). Continental then moved to strike the evidentiary hearing, arguing that such a hearing would be unnecessary considering Country Mutual had ample opportunity to provide any evidence and to set forth any and all objections to the claimed attorneys' fees and defense costs within its briefing (Doc. 77). Continental also filed a separate reply brief (Doc. 76).

The Court granted the motion to strike the evidentiary hearing and converted the hearing to oral argument on the issue of damages (Doc. 78). The hearing was set for August 27, 2020. On August 25, 2020, without any advance notice or leave of Court, Country Mutual filed an affidavit from Stephen Mudge, an attorney who represented Country Mutual's insured in the Underlying Lawsuits (Doc. 81). The affidavit purported to dispute the accuracy of several billing entries in Continental's billing records.

On August 27, 2020, the Court heard argument on the issue of damages. Because Country Mutual's affidavit was filed out of time and without leave of Court—and with no explanation as to why it was being filed—the Court struck the affidavit from the record (Doc. 83).

## Discussion

### I.  Equitable Subrogation and Unjust Enrichment

Having determined on summary judgment that Country Mutual's "Other Insurance" clause provided primary coverage for Hamel Fire and that Country Mutual had a duty to defend Hamel Fire in the Underlying Lawsuits, including the duty to

reimburse Continental for the cost of defending Hamel Fire, the Court should have then turned to the remaining counts: Continental's claims for equitable subrogation and unjust enrichment.

Equitable subrogation is "designed to place the ultimate responsibility for a loss upon the one on whom in good conscience it ought to fall and to reimburse the innocent party who is compelled to pay." *Cincinnati Ins. Co. v. Soc'y Ins.*, No. 14-CV-1319, 2015 WL 1058649, at *3 (C.D. Ill. Mar. 5, 2015) (quoting *Reich v. Tharp*, 167 Ill. App. 3d 496, 500, 521 N.E.2d 530, 533 (Ill. App. Ct. 1987)). The elements of an equitable subrogation claim by one insurer against another are as follows: "(1) the defendant carrier must be primarily liable to the insured for a loss under a policy of insurance; (2) the plaintiff carrier must be secondarily liable to the insured for the same loss under its policy; and (3) the plaintiff carrier must have discharged its liability to the insured and at the same time extinguished the liability of the defendant carrier. *Home Ins. Co. v. Cincinnati Ins. Co.*, 213 Ill. 2d 307, 323, 821 N.E.2d 269, 280 (Ill. 2004). Equitable subrogation claims do not depend on the existence of an agreement and "can arise simply from the fact of payment." *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 626 (7th Cir. 2001).

To recover under a theory of unjust enrichment, a plaintiff must demonstrate that the defendant "voluntarily accepted a benefit which would be inequitable for [it] to retain without payment." *Nat'l Cas. Co. v. White Mountains Reinsurance Co. of Am.*, 735 F.3d 549, 559–60 (7th Cir. 2013) (quoting *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill.2d 473, 180 Ill.Dec. 271, 607 N.E.2d 165, 177 (1992)). In Illinois, "[t]he theory of unjust enrichment is based on a contract implied in law . . . where there is a specific contract which governs

the relationship of the parties, the doctrine of unjust enrichment has no application." *Id.* (quotation omitted).

Here, whether under the theory of equitable subrogation or unjust enrichment, Continental is entitled to recoup all expenses incurred in defending Hamel Fire with respect to the Underlying Lawsuits. In its summary judgment order, the Court found that Country Mutual had a duty to defend Hamel Fire according to the terms of its policy, that the coverage provided for Hamel Fire under Continental's policy was excess over the insurance provided by the Country Mutual policy, and that Continental defended Hamel Fire throughout the litigation and settlement of the three Underlying Lawsuits. Moreover, Country Mutual received the benefit of Continental paying for all defense costs, and it would be inequitable for Country Mutual to retain that benefit without reimbursing Continental for its costs. The only remaining issue, therefore, is the amount of fees to which Continental is entitled.

## II.   Continental's Calculation of Damages

### A.   Attorneys' Fees and Costs

"The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). The petition must specify the services performed, by whom they were performed, the amount of time spent, and the hourly rate charged. *Kaiser v. MEPC Am. Properties, Inc.*, 164 Ill. App. 3d 978, 984, 518 N.E.2d 424, 427 (Ill. App. Ct. 1987).

In determining whether a fee is reasonable, a court must then consider additional

factors such as the skill of the lawyers, the nature of the case, the novelty and/or difficulty of the issues and work involved, the importance of the matter, the degree of responsibility required, the usual and customary charges for comparable services, the benefit to the client, and "whether there is a reasonable connection between the fees and the amount involved in the litigation." *Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820, 835 (7th Cir. 2020) (quoting *Kaiser v. MEPC Am. Props., Inc.*, 518 N.E.2d 424, 427 (1987)). The "best evidence of whether attorney's fees are reasonable is whether a party has paid them." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 653–54 (7th Cir. 2011) (quoting *Cintas Corp. v. Perry*, 517 F.3d 459, 469–70 (7th Cir. 2008)); *Westfield Ins. Co. v. Indemnity Ins. Co. of North America*, 423 F.Supp.3d 534, 556 (C.D. Ill. 2019) (the fact that an insurance company paid the fees supports the inference that the fees were reasonable).

Here, Continental has submitted documentation of all defenses fees and costs it paid in defending Hamel Fire. Specifically, it has provided an affidavit from Keith Keller, an employee of Continental who is familiar with the defense provided to Hamel Fire in the Underlying Lawsuits (Doc. 70-1). Keller attested that, following the law firms' submission of their invoices, Continental reviewed—and in some instances downwardly adjusted—the invoices before ultimately paying them (*Id.*). Keller also attested that Continental incurred $39,669.02 in costs, including court reporting, professional medical record review and analysis, printing services, and forensic crash analysis costs. Continental notes that it incurred these costs even though its ultimate ability to recoup those costs was uncertain at the time (*Id.*).

Continental further provided detailed billing records for the attorneys who provided the defense to Hamel Fire (Docs. 70-2, 70-3). The billing records contain descriptions of the work performed, the amount of time spent, the attorney who performed the work, and the hourly billing rate (*Id.*). In total, Continental seeks attorneys' fees and defense costs in the amount $240,146.18.

With regard to the factors the Court should consider in determining whether the requested fee is reasonable, Continental explains that it initially retained Douglas Heise, an attorney at Heyl Royster Voelker & Allen PC to represent Hamel Fire in the Underlying Lawsuits. Mr. Heise has over 30 years of litigation experience and significant experience defending individuals involved in auto accidents, including in trucking litigation. Mr. Heise and the law firm of Heyl Royster represented Continental from May 2013 through July 2015, charging only $160 per hour for partners and $140 per hour for associates. Continental notes that these rates are in line with, and arguably lower than, the usual and customary rates charged by attorneys in this jurisdiction. In total, Continental paid Heyl Royster $20,466.94 for its services.

Thereafter, Continental Western transferred the defense of Hamel Fire in the Underlying Lawsuits to James Temple and Joseph Skryd at the law firm of Mulherin Rehfeldt & Varchetto PC. Mr. Temple has decades of experience in civil litigation, while Mr. Skryd has more than 25 years of civil litigation experience in areas including trucking liability. Mr. Skryd also has been lead counsel in more than 220 jury, bench, and arbitration trials. The Mulherin Rehfeldt law firm defended Hamel Fire from April 2015 until the resolution and dismissal of the Underlying Lawsuits in October 2018, charging

only $155 per hour for partners and $140 per hour for associates. In total, Mulherin Rehfeldt incurred attorneys' fees of $180,010.30, which Continental Western paid in full.

With regard to the degree of responsibility required, Continental argues that Mr. Heise, Mr. Temple, and Mr. Skryd took on full responsibility in the management of the Underlying Lawsuits, including litigation strategy and discovery. Continental further asserts that the Underlying Lawsuits were more complex than a typical motor vehicle collision case. The accident involved a semi-truck that collided with an ambulance, implicating both individuals and private and municipal entities. There also were substantial injuries to the plaintiffs, which required significant medical record review and analysis, several depositions, and forensic accident reconstruction. The cases also involved cross-claims, which further complicated the issues.

With regard to the importance of the case, Continental argues that the injuries to the plaintiffs placed a significant amount of money at issue in potential damages. Additionally, damages could potentially have been borne by two municipal fire districts, lending additional complexity and importance to the case.

Next, Continental asserts that Hamel Fire reaped significant benefits from the defense provided by the above-referenced attorneys. Continental points out that Hamel Fire was released from the Underlying Lawsuits without being required to contribute any significant sums to the settlements.

Finally, Continental claims that there is a reasonable connection between the fees and the labor required to defend Hamel Fire in the Underlying Lawsuits. It argues that the complexity of the Underlying Lawsuits resulted in protracted litigation and extensive

discovery. Two of the lawsuits were pending for nearly six years before they were dismissed in October 2018. The third lawsuit was pending for well over three years until it, too, was dismissed. And the litigation involved significant discovery and motion practice, mediation, extensive review of medical records, and accident reconstruction services.

In response to Continental's fee request, Country Mutual asserts that Continental's brief is devoid of the evidentiary support required to meet its burden. First, it claims that the affidavit from Keith Keller is insufficient because he was not an attorney who worked on the cases. Next, it contends that a fee petition must consist of detailed records containing facts and computations upon which the charges are predicated, but that such information is lacking here. It claims the attorney invoices, with no work product or explanation, do not meet the required evidentiary standard. It also asserts Continental did not even attempt to meet the factors set out by Illinois law to determine the reasonableness of a requested fee. With respect to the attorney billing entries, Country Mutual generally claims there "are multiple attorneys performing the same tasks, and there are no other records provided in connection with the work allegedly performed to justify the fees sought." (Doc. 73 at p. 4). Country Mutual does not, however, point to any specific billing entries that are insufficiently described, duplicative, or otherwise deficient. It also provides no evidence disputing the reasonableness of the fees.

Country Mutual's position that Continental's brief is devoid of evidentiary support to meet its burden is mindboggling. Continental submitted hundreds of pages of attorney billing records, including the time spent and descriptions of all work completed.

It also provided an affidavit attesting that the fees were actually paid. Rather than dispute specific time entries, Country Mutual generally objected to the lack of evidentiary support for those time entries. But each entry included a description of the work performed, the attorney's name, the amount of time spent, and the hourly rate charged. That is all that is required under Illinois law. *See Kaiser*, 18 N.E.2d at 427. Continental also fully explained why the fees were reasonable using the very factors cited by Country Mutual in its briefing. And, of course, an insurer's payment of the defense costs is evidence of their reasonableness. Accordingly, the Court finds "there is a reasonable connection between the fees and the amount involved in the litigation." *See Abellan*, 948 F.3d at 835. Continental shall be awarded the full amount of fees and costs requested.

### B. Pre-Judgment Interest

Continental also asserts it is entitled to pre-judgment interest at five percent per annum, from the date the Underlying Lawsuits were dismissed to the date judgment originally was entered in this case on September 3, 2019. Continental calculates it is owed $10,394.72 in pre-judgment interest. Country Mutual argues pre-judgment interest is not allowable because the Court has not yet awarded any sums to Continental, and the amount of defense fees "are not currently ascertainable nor was Country ever provided any indication of the amounts claimed."

Illinois authorizes pre-judgment interest at five percent per annum on any money due pursuant to a written contract. 815 ILL. COMP. STAT. § 205/2. It is well established that § 205/2 "applies to actions by one insurer against another insurer for reimbursement of defense costs owed under insurance policies." *Westfield Ins. Co. v. Indem. Ins. Co. of N. Am.*,

423 F. Supp. 3d 534, 559 (C.D. Ill. 2019), *reconsideration denied*, No. 14-CV-3040, 2020 WL 223609 (C.D. Ill. Jan. 15, 2020); *see also Statewide Ins. Co. v. Houston General Ins. Co.*, 397 Ill.App.3d 410, 425, 336 Ill.Dec. 402, 920 N.E.2d 611, 623-24 (Ill App. Ct. 2009) ("Houston General failed to fulfill its duty to defend and indemnify JCC. Therefore, the award of prejudgment interest to Statewide was proper."). Furthermore, "the fact that the amount of the award was in dispute during this time does not preclude the trial court from awarding prejudgment interest for that period." *Marcheschi v. Illinois Farmers Ins. Co.*, 298 Ill. App. 3d 306, 314, 698 N.E.2d 683, 689 (Ill. App. Ct. 1998).

Here, Continental calculates it is owed $10,394.72 in pre-judgment interest, from October 22, 2018—the date the Underlying Lawsuits were dismissed—to September 3, 2019—the date judgment originally was entered in this matter. The Court agrees. On September 3, 2019, the Court declared that Country Mutual had a duty to defend Hamel Fire in the Underlying Lawsuits, including the duty to reimburse Continental for the cost of defending Hamel Fire. Furthermore, the amount owed was readily ascertainable here, unlike the cases cited by Country Mutual where there was a disparity between the fees sought and those awarded. *See Couch v. State Farm Ins. Co.*, 279 Ill.App.3d 1050 (Ill. App. Ct. 1996); *Santa's Best Craft LLC v. Zurich American Ins. Co.*, 408 Ill.App.3d 173 (Il. App. Ct. 2010). Continental is entitled to the full amount sought; thus, the sum due is easily calculated. Continental shall be awarded $10,394.72 in pre-judgment interest.

### C.     Post-Judgment Interest

Finally, basing its calculation on the Court's original September 3, 2019 judgment, Continental claims it is owed $3,199.03 in post-judgment interest as the prevailing party.

Under 28 U.S.C. § 1961, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . ." As noted in *Moran Foods, Inc. v. Mid-Atl. Mkt. Dev. Co., LLC*, 500 F. Supp. 2d 1079, 1081 (N.D. Ind. 2007), however, the majority of circuits have interpreted the post-judgment interest statute to require both a monetary amount and a final, appealable judgment. *See also R.E.I. Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, No. 05-57-GPM, 2007 WL 4225669, at *3 (S.D. Ill. July 10, 2007), *aff'd sub nom. REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693 (7th Cir. 2008). Because neither of those requirements presently exists in this case, Continental shall not be awarded the post-judgment interest it requests. Nonetheless, upon the entry of an amended judgment in this case, post-judgment interest will begin accruing at the rate established by 28 U.S.C. § 1961.

## CONCLUSION

For these reasons, Continental Western Insurance Company is awarded attorney's fees and defense costs in the amount $240,146.18, as well as pre-judgment interest of $10,394.72, for a total of **$250,540.90**. The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:** September 10, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**